Frank R. Schirripa
John A. Blyth
HACH ROSE SCHIRRIPA & CHEVERIE LLP
112 Madison Avenue, 10th Floor
New York, New York 10016
Telephone: (212) 213-8311
Facsimile: (212) 779-0028

*Counsel for Plaintiffs*

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| RICHARD MCBRIDE, JOHN BEVERLY, VICTOR LAMSON, DONALD TAYLOR, RYAN FENNAL, MICHAEL VENEZIALE, THOMAS MONZO, MANUEL MARTINEZ, DANIEL MITCHELL, KEVIN CUNNINGHAM, JUAN LOPEZ, WAYNE GROVE, WILLIAM NEWNAM, JR., and RYAN SHORT,<br><br>                    Plaintiffs,<br><br>          v.<br><br>KLINE CONSTRUCTION CO., INC., KLINE CONSTRUCTION CO., INC. 401(K) PLAN, KATHERINE KLINE-PENATE, J. EDWARD KLINE, and ROBERT MILLER,<br><br>                    Defendants. | Civil Action No.:<br><br><br><br>**<u>COMPLAINT</u>**<br><br><br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Richard Mcbride, John Beverly, Victor Lamson, Donald Taylor, Ryan Fennal,

Michael Veneziale, Thomas Monzo, Manuel Martinez, Daniel Mitchell, Kevin Cunningham, Juan

Lopez, Wayne Grove, William Newnam, Jr., and Ryan Short (collectively "Plaintiffs"), by and

through their attorneys, Hach Rose Schirripa & Cheverie, LLP, complaining of the Defendants,

Kline Construction Co., Inc., Kline Construction Co., Inc. 401(K) Plan, Katherine Kline-Penate,

J. Edward Kline, and Robert Miller (collectively "Defendants"), bring this action for illegal wage practices and breaches of fiduciary duties in violation of (1) The Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1001, *et seq.* ("ERISA"); (2) The New Jersey Wage Payment Law, N.J.S.A. §§ 34:11-4.1, *et seq.* ("NJWPL"); and (3) common law unjust enrichment and breach of contract principles.  Plaintiffs respectfully allege as follows:

## NATURE OF THE ACTION

1.     Plaintiffs bring this action against their former employer, Defendant Kline Construction Co., Inc. ("Kline" or the "Company"), its employee benefit plan, Defendant Kline Construction Co., Inc. 401(k) Plan (the "401(k) Plan"), and the Company's principals who sponsor, administrate and serve as trustees of the 401(k) Plan, Individual Defendants Katherine "Kathie" Kline-Penate ("Kline-Penate"), J. Edward "Ed" Kline (Ed Kline") and Robert "Bob" Miller ("Miller"), for their breaches of fiduciary duty in the offering and administration of the 401(k) Plan, including the willful non-payment, withholding, and diversion of Plaintiffs' wages in violation of numerous state and federal laws.

2.     Plaintiffs, who are members of the International Association of Machinists and Aerospace Workers, Local S-76 ("Local 76"), were employed as operators/laborers in Kline's Gas Division.  As part of Plaintiffs' compensation package, Defendants advised Plaintiffs that the Company would establish an individual 401(k) Plan account with John Hancock Retirement Plan Services on Plaintiffs' behalf.

3.     Since at least 2016, however, Plaintiffs have been victims of an illegal pay scheme perpetrated by Defendants, which included the Company's refusal to remit to the 401(k) Plan withholdings from Plaintiffs' paychecks that were designated as employee contributions, the illegal retention of Plaintiffs' contributions for their own uses that were not solely in the interest

of the 401(k) Plan participants (*i.e.* Plaintiffs), the clear breach of their fiduciary duties as 401(k) sponsors, and the ongoing and continuing failure to pay Plaintiffs the missing contributions, as well as the interest Plaintiffs would have earned on their money had it been properly invested in their retirement accounts.

4.     In addition, for certain Plaintiffs, Defendants never even opened a 401(k) Plan account for the contributions to be directed to, despite continued misrepresentations that the Company had established a 401(k) account for them, which was being funded with the wages withheld from their paychecks.

5.     Defendants also failed to furnish to Plaintiffs any 401(k) Plan summary plan descriptions, annual reports or other plan-related documents that Kline – including Kline-Penate as plan administrator – were automatically required to provide pursuant to ERISA. In fact, Defendants consistently ignored various requests by Plaintiffs for copies of documents reflecting 401(k) Plan activity, investment performance, and Plaintiffs' contribution amounts and allocations.  In fact, not only did the Company lie about opening and/or contributing to Plaintiffs' 401(K) accounts, and reject Plaintiffs' requests for 401(k) Plan documents, Defendants threatened that Plaintiffs would be terminated if they ever attempted to withdraw money from the 401(k) Plan while employed with Kline.

6.     Throughout the relevant time period, Defendants actively attempted to conceal their illegal activity by, among other things, issuing Plaintiffs inaccurate and confusing paystubs reflecting categories for deductions that were inconsistent and constantly changing. When Plaintiffs would speak to Kline management or Human Resources regarding errors in their paystubs, Defendants would either provide false information, such as the Company changed to a new payroll program, or simply dismiss Plaintiffs' inquiries all together.

7.     While Defendants failed to remit Plaintiffs' wage withholdings since at least 2016, Plaintiffs did not learn of the Company's illegal scheme until their respective separations from Kline, which occurred during the period of December 2017 to March 2019.  Once Plaintiffs' employment with Defendants ended, they inquired with various Kline representatives regarding the status of their 401(k) Plan accounts and the process for withdrawing and/or rolling-over their account funds.

8.     When Plaintiffs ultimately learned that their wages were being retained by Defendants, and not deposited and invested in their 401(k) accounts, they made numerous attempts to recoup their money from the Company's payroll personnel and management.

9.     Defendants do not dispute the Plaintiffs' claims that the Company illegally failed to remit the withholdings from their paychecks to their 401(k) accounts. Instead, Defendants have responded to Plaintiffs' inquiries regarding their missing contributions to a different Kline department and/or promising that Kline will make good on its debt.

10.    To date, Defendants have not paid Plaintiffs a cent of the monies that were designated for their 401(k) Plan accounts, much less the gains that Plaintiffs' would have earned on their contributions had funds been properly invested in the 401(k) Plan.

11.    Instead of paying Plaintiffs the money owed to them, on March 14, 2019, the Company shut down the Gas Division, effectively terminating those remaining Plaintiffs who were still employed with the Company, and increasing the financial hardship on Plaintiffs and their families.

12.    This is an action for violation of multiple federal and state statutes governing employee benefit plans and the payment of wages, including the civil enforcement and fiduciary provisions of ERISA, 29 U.S.C. § 1132(a)(1) and (2) and the provisions governing non-payment,

withholding, and diversion of wages under the NJWPL, N.J.S.A. §§ 34:11-4.4.

13.     Defendants have also violated ERISA, 29 U.S.C. § 1124(b)(1) requiring plan administrators to furnish certain plan-related documents to plan beneficiaries, as well as the recordkeeping requirements of the NJWPL, N.J.S.A. § 34:11-4.6 by failing to maintain, generate and make available to Plaintiffs accurate payroll records for Plaintiffs. Accordingly, Defendants are liable for civil penalties pursuant to ERISA, 29 U.S.C. § 1132(c)(1)(B) and the NJWPL, N.J.S.A. § 34:11-4.10.

14.     Additionally, Plaintiffs allege that Defendants have been unjustly enriched by the financial benefit derived from the Company's willful retention of and refusal to remit Plaintiffs' wage deductions to their designated 401(k) retirement accounts.

## JURISDICTION AND VENUE

15.     ERISA provides for exclusive federal jurisdiction over ERISA breach of fiduciary duty claims. 29 U.S.C. § 1132(e)(1). The 401(k) Plan is and "employee benefit plan" within the meaning of ERISA, 29 U.S.C. § 1002(3), and Plaintiffs are plan participants within the meaning of ERISA, 29 U.S.C. § 1002(7). Plan participants are authorized to bring actions such as this to obtain appropriate relief in their individual capacities. ERISA, 29 U.S.C. § 1132(a)(1) and (2).

16.     This Court has subject matter jurisdiction over all federal claims asserted in this action pursuant to 28 U.S.C. § 1331 (federal question) since this case is brought under ERISA, 29 U.S.C. § 1132(e)(1).

17.     With respect to the Plaintiffs' state claims under the NJWPL, the Court's supplemental jurisdiction is invoked pursuant to 28 U.S.C. § 1367(a), as the state claims are so related that they form part of the same case or controversy under Article III of the United States Constitution.

18.     Venue is proper in the District of New Jersey pursuant to 28 U.S.C. § 1391(b) and ERISA, 29 U.S.C. § 1132(e)(2), because the employee benefit plan at issue is administered in this district, the fiduciary breaches for which relief is sought occurred in this District, the Defendants reside and may be found in this District, and the unlawful pay practices complained of occurred in this District.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

19.     Plaintiffs have been provided little to no administrative support from Kline with respect to their claims to recover their unremitted 401(k) contributions. As fiduciary, sponsor and administrator of the 401(k) Plan, Kline has retained full control over the Plaintiffs' contributions. Indeed, for certain Plaintiffs, Kline declined to even open a 401(k) account for them, despite representing that an account was open and being funded with the employees' wage withholdings. For other Plaintiffs who actually had an active 401(k) account with John Hancock were similarly unable to access their money without Kline's permission. When Plaintiffs would call John Hancock for account information, a representative would advise that they could not disclose any information about the employee's account without the permission of the 401(k) Plan administrator – Individual Defendant Kline-Penate.

20.     In fact, upon hiring the Plaintiffs, Defendants threatened Plaintiffs' employment by stating that if they ever attempted to withdraw the funds in their 401(k) account, they would no longer have a job at Kline.

21.     After Plaintiffs learned that their 401(k) accounts either did not exist or were never funded by Kline, they made numerous inquiries with Kline personnel regarding the missing funds. Kline would respond with a bevy of false and misleading information such as "we are working on it" or "the money was never yours to begin with." To date, the Defendants have not paid Plaintiff

(or restored to Plaintiffs' 401(k) account) the missing contributions or the interest those fund would have earned had they been properly invested.

22.     Plaintiff were never made aware of an administrative process where they could raise a benefit-related dispute with respect to the 401(k) Plan. Plaintiffs were never provided any documents, statements or other records explaining the terms of the 401(k) Plan and/or their rights under the same. Despite the lack of a formal dispute process available to Plaintiffs, they still acted diligently in seeking recourse from Kline personnel. That said, because the people Plaintiff is seeking relief from are the same people who unlawfully retained Plaintiffs' money in the first place, it is clear that requiring Plaintiffs to first resort to the 401(k) Plan administrative process – to the extent one exists – would be futile.

23.     As such, any exhaustion requirement on Plaintiffs may be excused as the Plaintiffs have been threatened with irreparable harm and denied meaningful access to administrative procedures by Defendants. Furthermore, because the individuals/entities Plaintiffs are seeking relief from are the same individuals/entities who unlawfully retained Plaintiffs' money in the first place, it is clear that requiring Plaintiffs to first resort to the 401(k) Plan administrative process – to the extent one exists – would be futile.

24.     Accordingly, under the present circumstances, Plaintiffs have acted reasonably in seeking immediate judicial review.

## PARTIES

**Plaintiffs:**

25.     Plaintiff Richard McBride ("McBride") was employed as a Local 76 operator/laborer in Kline's Gas Division from July 2016 until his termination on March 14, 2019. During the relevant time period, Kline sponsored and administered a 401(k) Plan account for

McBride. McBride's 401(k) Plan account was established during a prior stretch of employment with Kline from 2010 to 2013. When McBride returned to work for the Company in 2016, he was advised that the Company would continue to fund the same 401(k) Plan account that he previously contributed to. McBride's fringe benefits, which Kline automatically deducted from his bi-weekly paycheck, were designated for and required to be contributed to the 401(k) Plan by Kline on behalf of McBride. At all times relevant to this Complaint, McBride resided in Hammonton, New Jersey.

26.     Plaintiff John Beverly ("Beverly") was employed as a Local 76 operator/laborer in Kline's Gas Division from October 2016 until his termination on March 14, 2019. During the relevant time period, Kline sponsored and administered a 401(k) Plan account for Beverly. Beverly's 401(k) Plan account was established during a prior stretch of employment with Kline. When Beverly returned to work for the Company in 2016, he was advised that the Company would continue to fund the same 401(k) Plan account that he previously contributed to. Beverly's 401(k) contributions, which Kline automatically deducted from his bi-weekly paycheck, were designated for and required to be contributed to the 401(k) Plan by Kline on behalf of Beverly. At all times relevant to this Complaint, Beverly resided in Bridgeton, New Jersey.

27.     Plaintiff Victor Lamson ("Lamson") was employed as a Local 76 operator/laborer in Kline's Gas Division from June 10, 2012 until his termination on March 14, 2019. Lamson's compensation included annuity and health fringe benefits. During the relevant time period, Kline sponsored and administered a 401(k) Plan account for Lamson. Lamson's 401(k) Plan account was established when Lamson first started working for Kline in 2012. Kline automatically deducted Lamson's 401(k) contributions from his bi-weekly paycheck. These withholdings were designated for and required to be contributed to the 401(k) Plan by Kline on behalf of Lamson. At all times relevant to this Complaint, Lamson resided in Glassboro, New Jersey.

28.     Plaintiff Donald Taylor ("Taylor") was employed as a Local 76 operator/laborer in Kline's Gas Division from early 2014 to August 2018.  Taylor's compensation included annuity and health fringe benefits. During the relevant time period, Kline sponsored and administered a 401(k) Plan account for Taylor. Taylor's 401(k) Plan account was established when Taylor first started working for Kline in 2014. Kline automatically deducted Taylor's 401(k) contributions from his bi-weekly paycheck. These withholdings were designated for and required to be contributed to the 401(k) Plan by Kline on behalf of Taylor. At all times relevant to this Complaint, Taylor resided in Clayton, New Jersey.

29.     Plaintiff Ryan Fennal ("Fennal") was employed as a Local 76 operator/laborer in Kline's Gas Division from early July 2016 to July 2018.  Fennal's compensation included annuity and health fringe benefits. During the relevant time period, Kline sponsored and administered a 401(k) Plan account for Fennal. Fennal's 401(k) Plan account was established when Fennal first started working for Kline in 2016. Kline automatically deducted Fennal's 401(k) contributions from his bi-weekly paycheck. These withholdings were designated for and required to be contributed to the 401(k) Plan by Kline on behalf of Fennal. At all times relevant to this Complaint, Fennal resided in Rosenhayn, New Jersey.

30.     Plaintiff Michael Veneziale ("Veneziale") was employed as a Local 76 operator/laborer in Kline's Gas Division from March 2010 to October 2018. Veneziale's compensation included annuity and health fringe benefits. During the relevant time period, Kline sponsored and administered a 401(k) Plan account for Veneziale. Veneziale's 401(k) Plan account was established when Veneziale first started working for Kline in 2010. Kline automatically deducted Veneziale's 401(k) contributions from his bi-weekly paycheck. These withholdings were designated for and required to be contributed to the 401(k) Plan by Kline on behalf of Veneziale.

At all times relevant to this Complaint, Veneziale resided in Berlin, New Jersey.

31.    Plaintiff Thomas Monzo ("Monzo") was employed as a Local 76 operator/laborer in Kline's Gas Division until his termination on March 14, 2019. Upon information and belief, during the relevant time period, Kline sponsored and administered a 401(k) Plan account for Monzo. Monzo's 401(k) Plan account was established when he started working for Kline.  Kline automatically deducted Monzo's 401(k) contributions from his bi-weekly paycheck. These withholdings were designated for and required to be contributed to the 401(k) Plan by Kline on behalf of Monzo. At all times relevant to this Complaint, Monzo resided in Philadelphia, Pennsylvania.

32.    Plaintiff Manuel Martinez ("Martinez") was employed as a Local 76 operator/laborer in Kline's Gas Division until his termination on March 14, 2019. During the relevant time period, Kline sponsored and administered a 401(k) Plan account for Martinez. Martinez's 401(k) Plan account was established when he started working for Kline.  Kline automatically deducted Martinez's 401(k) contributions from his bi-weekly paycheck. These withholdings were designated for and required to be contributed to the 401(k) Plan by Kline on behalf of Martinez. At all times relevant to this Complaint, Martinez resided in Sicklerville, New Jersey.

33.    Plaintiff Daniel Mitchell ("Mitchell") was employed as a Local 76 operator/laborer in Kline's Gas Division from September 2016 until his termination on March 14, 2019. Mitchell's compensation included annuity and health fringe benefits. Upon hiring, Kline told Mitchell that an account would be established with the Company's 401(k) Plan on Mitchell's behalf. Kline never set up a 401(k) Plan account for Mitchell even though Kline automatically deducted wages from his bi-weekly paycheck that were designated as 401(k) Plan contributions. At all times relevant to

this Complaint, Mitchell resided in Williamstown, New Jersey.

34.    Plaintiff Kevin Cunningham ("Cunningham") was employed as a Local 76 operator/laborer in Kline's Gas Division from February 2017 until his termination on March 14, 2019.  Cunningham's compensation included annuity and health fringe benefits. Upon hiring, Kline told Cunningham that an account would be established with the Company's 401(k) Plan on Cunningham's behalf. Kline never set up a 401(k) Plan account for Cunningham even though Kline automatically deducted wages from his bi-weekly paycheck that were designated as 401(k) Plan contributions. At all times relevant to this Complaint, Cunningham resided in Sewell, New Jersey.

35.    Plaintiff Juan Lopez ("Lopez") was employed as a Local 76 operator/laborer in Kline's Gas Division from March 2016 until his termination on March 14, 2019. Lopez's compensation included annuity and health fringe benefits. Upon hiring, Kline told Lopez that an account would be established with the Company's 401(k) Plan on Lopez's behalf. Kline never set up a 401(k) Plan account for Lopez even though Kline automatically deducted wages from his bi-weekly paycheck that were designated as 401(k) Plan contributions. At all times relevant to this Complaint, Lopez resided in Vineland, New Jersey.

36.    Plaintiff Wayne Grove ("Grove") was employed as a Local 76 operator/laborer in Kline's Gas Division from April 9, 2017 to December 30, 2017. Grove's compensation included annuity and health fringe benefits. Upon hiring, Kline told Grove that an account would be established with the Company's 401(k) Plan on Grove's behalf. Kline never set up a 401(k) Plan account for Grove even though Kline automatically deducted wages from his bi-weekly paycheck that were designated as 401(k) Plan contributions. At all times relevant to this Complaint, Grove resided in Newfield, New Jersey.

37.     Plaintiff William Newnam, Jr. ("Newnam") was employed as a Local 76 operator/laborer in Kline's Gas Division from April 2017 to April 2018. Newnam's compensation included annuity and health fringe benefits. Upon hiring, Kline told Newnam that an account would be established with the Company's 401(k) Plan on Newnam's behalf. Kline never set up a 401(k) Plan account for Newnam even though Kline automatically deducted wages from his bi-weekly paycheck that were designated as 401(k) Plan contributions. At all times relevant to this Complaint, Newnam resided in Shamong, New Jersey.

38.     Plaintiff Ryan Short ("Short") was employed as a Local 76 operator/laborer in Kline's Gas Division from October 25, 2016 to April 25, 2018.  Short's compensation included annuity and health fringe benefits. Upon hiring, Kline told Short that an account would be established with the Company's 401(k) Plan on Short's behalf. Kline never set up a 401(k) Plan account for Short even though Kline automatically deducted wages from his bi-weekly paycheck that were designated as 401(k) Plan contributions. At all times relevant to this Complaint, Short resided in Franklinville, New Jersey.

**Defendants:**

39.     Defendant Kline Construction Co., Inc. is, and at all times hereafter mentioned was, a New Jersey corporation engaged in utility support contracting. Kline maintains six locations throughout New Jersey with its headquarters located at 240 Waveland Avenue, Galloway, NJ 08205. Kline was Plaintiffs' employer during the relevant time period. Kline is the Sponsor and Administrator of the 401(k) Plan. At all times hereinafter mentioned, Kline has been an employer and Plan Sponsor with respect to the 401 (k) Plan within the meaning of ERISA Sections 3(5) and 3(16)(B), 29 U.S.C. §§ 1002(5) and 1002(16)(B).

40.     Additionally, at all times hereinafter mentioned, Kline has been a fiduciary and

party in interest with respect to the 401(k) Plan within the meaning of ERISA Section 3(14) and 3(21)(A), 29 U.S.C. §§ 1002(14) and 1002(21)(A), in that it was the 401(k) Plan Administrator and had or exercised discretionary authority and responsibility with respect to 401(k) Plan administration and management and exercised actual control over 401(k) Plan assets.

41.     Defendant Kline Construction Co., Inc. 401(K) Plan is an employee benefit plan within the meaning of Section 3(3) of ERISA, 29 U.S.C. § 1002(3), and therefore subject to the coverage of the Act, pursuant to Section 4(a) of ERISA, 29 U.S.C. § 1003(a).  The 401(k) Plan was established and maintained by a single-employer sponsor, Defendant Kline, pursuant to 29 U.S.C. § 1002(16)(B). The 401(k) Plan is administered in Galloway, New Jersey.

42.     Defendant Katherine "Kathie" Kline-Penate, at all times relevant to this action is, and at all times hereafter mentioned was, a Vice President ("VP") of Kline and its Director of Finance / Chief Financial Officer ("CFO").  At all times relevant, Kline-Penate a trustee of the 401(k) Plan and made decisions regarding the Plan, including decisions as to the disposition of 401(k) Plan assets. Kline-Penate was designated as the Administrator of the 401(k) Plan. As plan Administrator, Kline-Penate exercised discretionary authority and discretionary control respecting the management of the 401(k) Plan, exercised authority and control respecting the management and disposition of the 401(k) Plan's assets, and had discretionary authority and discretionary responsibility in the administration of the 401(k) Plan, including whether Plaintiffs' wages are properly remitted to the 401(k) Plan. Kline-Penate is therefore a fiduciary of the 401(k) Plan within the meaning of Section 3(21) of ERISA, 29 U.S.C. § 1002(21) and a party-in-interest as that term is defined in Sections 3(14)(A) and (H) of ERISA, 29 U.S.C. §§ 1002(14)(A) and (H).   Kline-Penate also exercised control over the payment of Plaintiffs' wages, wage withholdings and the issuance of Plaintiffs' paystubs and pay statements.

43.     Defendant Ed Kline was the President of Defendant Kline during the relevant time period, as well as a trustee of the 401(k) Plan.   At all relevant times, Ed Kline exercised discretionary authority and control respecting management of the 401(k) Plan, including making decisions regarding the disposition of the 401(k) Plan's assets, and had discretionary authority in the administration of the Plans. Ed Kline was responsible for deciding how the Company's funds would be committed, including whether monies withheld from employees' paychecks would be remitted to the 401(k) Plan or used to satisfy other financial obligations. Ed Kline is therefore a fiduciary of the 401(k) Plan within the meaning of Section 3(21) of ERISA, 29 U.S.C. § 1002(21), and a party-in-interest as that term is defined in Sections 3(14) (A) and (H) of ERISA, 29 U.S.C. §§ 1002(14) (A) and (H).

44.     Defendant Robert "Bob" Miller was the President of Defendant Kline during the relevant time period, as well as a trustee of the 401(k) Plan.   At all relevant times, Miller exercised discretionary authority and control respecting management of the 401(k) Plan, including making decisions regarding the disposition of the 401(k) Plan's assets, and for deciding how the Company's funds would be committed, including whether monies withheld from employees' paychecks would be remitted to the 401(k) Plan or used to satisfy other financial obligations. Miller is therefore a fiduciary of the 401(k) Plan within the meaning of Section 3(21) of ERISA, 29 U.S.C. § 1002(21), and a party-in-interest as that term is defined in Sections 3(14) (A) and (H) of ERISA, 29 U.S.C. §§ 1002(14) (A) and (H).

45.     The 401(k) Plan is joined as party defendant pursuant to Rule 19(a) of the Federal Rules of Civil Procedure solely to assure that complete relief can be granted.

46.     Defendants employed Plaintiffs at all times relevant to this Complaint, within the meaning of the N.J.SA 34:11-4.1 of the NJWPL.

47.     Defendants have had substantial control over the wages and working conditions of Plaintiffs. Defendants have had control over all employment practices at Kline at all times relevant to this matter, including wages, scheduling, and recordkeeping.

## FACTS

### A. Background

48.     Plaintiffs worked in Kline's Gas Division where they were responsible for building, repairing and maintaining natural gas distribution lines that were used by various utility companies servicing customers throughout the State of New Jersey. Plaintiffs' hours and compensation were governed by a Collective Bargaining Agreement ("CBA") entered into between Kline and the International Association of Machinists and Aerospace Workers, Local S-76 ("Local 76"). According to the CBA, Plaintiffs were paid at a rate of $39.45 per hour for a forty-hour (40) workweek of Monday – Friday from 7:00 AM to 3:00 PM.

49.     Plaintiffs' compensation package also included pension and health fringe benefits, which were funded through automatic deductions in their paychecks by the Company.

50.     During Plaintiffs' employment with Kline, certain representatives of the Company, including Individual Defendants Kline-Penate and Ed Kline, advised Plaintiffs that the Company would be establishing a 401(k) retirement account for them with John Hancock – *i.e.* the 401(k) Plan.   The 401(k) Plan permitted participants to contribute a portion of their pay to the 401(k) Plan as elective salary deferrals ("employee contributions") through payroll deductions.

51.     In addition to learning that the Company would be establishing 401(k) account on their behalf, the Defendants also advised Plaintiffs of certain Company-imposed restrictions on Plaintiffs' ability to access and withdraw their John Hancock accounts.  Specifically, Defendants Kline-Penate, Ed Kline and Miller, among others, told Plaintiffs that they were not permitted to

withdraw any money from their John Hancock accounts during their employment with Kline.

52.     In fact, in attempt to conceal their ongoing misappropriation of 401(k) Plan funds, Defendants told Plaintiffs that if they ever attempted to withdraw their 401(k) Plan accounts funds, Plaintiffs' employment with Kline would be terminated, and they would never be barred from any future employment with the Company.

53.     As a result of Defendants' persistent threats and misrepresentations regarding Plaintiffs' 401(k) accounts, Kline and Individual Defendants, for years, were able to retain Plaintiffs' wages for their own benefit. Indeed, Individual Defendant Kline-Penate was notorious for using Company funds – and more particularly, Plaintiffs' wages – to pay for her personal expenditures. Kline-Penate's misappropriation of Company assets has included the purchase of a new Chevrolet Corvette sports car for her non-employee husband, paying her husband a salary in excess of $100,000 despite the fact that he does not work for Kline, and buying parts for her Recreational Vehicle and boat, including two boat motors costing hundreds of thousands of dollars that Kline-Penate had delivered directly to Kline's office.

**B.  Missing Contributions to Plaintiffs' 401(k) Plan Accounts**

54.     Defendants opened John Hancock 401(k) accounts on behalf of Plaintiffs McBride, Beverly, Lamson, Taylor, Fennal, Veneziale, Monzo, and Martinez. For Plaintiffs McBride, Beverly, Lamson and Taylor, their 401(k) accounts were established during a prior stretch of employment with Kline during 2010-2014. Plaintiffs Fennal, Veneziale, Monzo, and Martinez's 401(k) accounts were set up when they first became employed with Kline in 2014-2016.

55.     Upon information and belief, when Plaintiffs' 401(k) accounts were initially established their wage withholdings were appropriately remitted to the 401(k) Plan by Defendants. Beginning in 2016, however, Defendants began retaining Plaintiffs' 401(k)-designated wage

deductions for their own benefit, a practice concealed from Plaintiffs through the misrepresentations and shoddy record-keeping practices by the Company and its representatives.

56.     For payroll periods beginning in 2016 through at least June 2018 ("the relevant period"), the Company deducted money from the participants' pay as employee contributions to the 401(k) Plan. During the relevant period, Defendants retained the employee contributions rather than deposit the withholdings into the 401(k) Plan. The employee contributions were commingled with the general assets of the Company and used the pay the Company's business expenses, as well as for the personal expenditures of the Individual Defendants.

57.     In addition to blocking Plaintiffs' access to the 401(k) accounts by threatening their employment with the Company, Defendants implemented misleading record-keeping practices in a further attempt to hide their misconduct. These practices included using inconsistent withholding titles/descriptions for the 401(k) contributions withheld from Plaintiffs' paychecks. Plaintiffs' weekly pay statements were not only confusing, but often failed to correspond with "Year to Date" totals provided on the pay statement, as well as the end-of-year pay statements that Kline issued to Plaintiffs at the end of each calendar year.

58.     An example of the Company's erratic payroll practices is demonstrated in the pay stubs of Plaintiff Donald Taylor:

**Pay Period: 01/01/2017 to 01/07/2017**

| Paygroup | Hours | Type | Payrate | Wage | Deduction | Check | Ytd |
|----------|-------|------|---------|------|-----------|-------|-----|
| Labor | 24.00 | Reg | 38.30 | 919.20 | | | |
| | | | | | L-Annuity/Pension | 321.60 | 643.20 |

59.     For the above pay period, Kline deducted $321.60 from Taylor's wages for "L-Annuity/Pension" – *i.e.* the 401(k) Plan.  Although this is the first pay period for the year 2017, Taylor's pay stub reflects $643.20 in year-to-date ("YTD") contributions for 2017.

**Pay Period: 03/26/2017 to 04/01/2017**

| Paygroup | Hours | Type | Payrate | Wage | Deduction | Check | Ytd |
|---|---|---|---|---|---|---|---|
| Labor | 32.00 | Reg | 39.45 | 1,262.40 | | | |
| | | | | | L-Annuity/Pension | [blank] | 3,765.40 |
| | | | | | L-Annuity/Pension | 452.80 | 2,037.60 |

60.     For the 03/26/2017 to 04/01/2017 pay period a few months later, Taylor's pay stub contains a second deduction item labeled as "L-Annuity/Pension." Under the first L-Annuity/Pension item, there is no present deduction, but reflects YTD withholdings of $3,765.40. The second L-Annuity/Pension item reflects a $452.80 deduction from Taylor's wages for that week, along with an additional $2,037.60 in L-Annuity/Pension withholdings YTD.

61.     Accordingly, as of April 1, 2017, $5,803 had been withheld from Taylor's 2017 wages YTD, however, Defendants failed to remit any of the money to Taylor's 401(k) Plan account.

62.     Thereafter, the misleading and inaccurate deductions reflected on Taylor's pay stubs continued to change. By way of example, according to Taylor's pay stubs for the periods of 06/18/2017 to 06/24/2017 and 06/25/2017 to 07/01/2017 the second item for "L-Annuity/Pension," which reflected a YTD total of $8,348.53, had disappeared completely.

**Pay Period: 06/18/2017 to 06/24/2017**

| Paygroup | Hours | Type | Payrate | Wage | Deduction | Check | Ytd |
|---|---|---|---|---|---|---|---|
| Labor | 32.00 | Reg | 39.45 | 1,262.40 | | | |
| Labor | 5.00 | Ovt | 59.18 | 295.90 | | | |
| | | | | | L-Annuity/Pension | [blank] | 3,765.40 |
| | | | | | L-Annuity/Pension | 636.75 | 8,348.53 |

**Pay Period: 06/25/2017 to 07/01/2017**

| Paygroup | Hours | Type | Payrate | Wage | Deduction | Check | Ytd |
|---|---|---|---|---|---|---|---|
| Labor | 40.00 | Reg | 39.45 | 1,578.00 | | | |
| Labor | 1.50 | Ovt | 59.18 | 88.77 | | | |
| | | | | | L-Annuity/Pension | [blank] | 3,765.40 |

63.     In the beginning of 2018, Defendants continued their misleading payroll reporting practices with a further adjustment to Plaintiffs' pay stubs. According to Taylor's pay stub for the period of 02/04/2018 to 01/10/2018, Kline's 401(k) wage deductions were reported as follows:

**Pay Period: 02/04/2018 to 01/10/2018**

| Paygroup | Hours | Type | Payrate | Wage | Deduction | Check | Ytd |
|----------|-------|------|---------|------|-----------|-------|-----|
| PWLF-76 | 40.00 | Reg | 41.00 | 1,640.00 | | | |
| | | | | | PWL-Pension | 326.00 | 326.00 |
| | | | | | PWL-Defined Contrib | 240.00 | 240.00 |

64.     When Plaintiffs approached Kline's representatives (including Kline-Penate and HR/payroll employees, "Kari" and "Ron") regarding their payroll deductions, Defendants would provide a host of excuses to their employees, such as referring to a change in the Company's payroll vendor, a new tax or accounting practice, or tell the Plaintiff that he is simply "confused" and that he should not worry about the Company's payroll practices.

65.     By way of example, in early January 2019, Plaintiff McBride (who had an active John Hancock 401(k) account from a previously stint of employment with Kline in 2010-2013) received in the mail a John Hancock Retirement Account Statement for the period of October 1, 2018 to December 31, 2018. The Statement was addressed to McBride's home in Hammonton, NJ, as well as to "Kline Construction, Attn: Katherine M. Kline-Penate, 240 Waverland Avenue, Galloway, NJ 08205." The Statement also contained the heading: "The Trustees of Kline Construction Co., Inc. 401(k) Plan; Contract Number: 108288."

66.     McBride was surprised when he received the John Hancock Statement given that he did not request the record, and the fact that up until that point, McBride had not been successful in obtaining any of his 401(k) account documents from John Hancock. In fact, when McBride had made previous attempts to contact John Hancock in years prior, he was advised that he had to speak to the plan's administrator – Kline-Penate – in order to obtain his 401(k) account

information.

67.     When McBride reviewed the John Hancock Statement he was shocked to learn that his account value, as of December 31, 2018, was only $3,070.39. McBride's could not understand why the account balance was so low when he had been contributing to his 401(k) on a weekly basis since he re-joined the Company in July 2016.

68.     In an effort to clear up the confusion, McBride immediately called Individual Defendant Kline-Penate to question her about the irregularities in his John Hancock Statement. Kline-Penate initially tried to dismiss McBride's concerns, stating that the Company was "working on it" and that the issue would be cleared up soon. When McBride continued to press Kline-Penate, she told him to contact Kari in payroll who would be able to assist him further.

69.     McBride, along with the other Plaintiffs, knew that contacting Kline directly for 401(k) account information would be futile. Not only did Defendants fail to cooperate with Plaintiffs' requests for information, certain Company representatives even threatened taking legal action against Plaintiffs if they continued to pursue the issue.

70.     In 2017, McBride learned of an incident involving Individual Defendant Ed Kline and certain Kline employees who were members of a different labor union, Local 172, where Ed Kline was addressing his employees' concerns the Company's failure to fund their retirement account.  Specifically, Ed Kline told the workers that if they ever went to a lawyer, he could have them pulled over while out on the road and have drugs planted in their work vehicles.  Given how threats of this nature concerning employees' access to their retirement funds was commonplace within the Company, it was clear to Plaintiffs that any attempt to obtain retirement account information from Defendants would be a dead end.

71.     Despite Kline's continued deductions of McBride, Taylor and the other Plaintiffs'

wages for contributions to their 401(k) Plan accounts, Defendants failed to remit and unlawfully retained all of Plaintiffs' withholdings to the 401(k) Plan. It was not until the remaining Plaintiffs were terminated in March 2019 that the Plaintiffs learned the full extent of Defendants' misappropriations of their 401(k) funds.

**C.  Defendants' Failure to Establish Plaintiffs' 401(k) Plan Accounts**

72.     Unlike Plaintiffs McBride, Beverly, Lamson, Taylor, Fennal, Veneziale, Monzo, and Martinez who, upon information and belief, had active, albeit unfunded, 401(k) accounts, the Defendants failed to establish 401(k) accounts on behalf of Plaintiffs Mitchell, Cunningham, Lopez, Grove, Newnam, and Short. In fact, when Plaintiffs Mitchell, Cunningham, Lopez, Grove, Newnam, and Short were hired by Kline during the period of March 2016 to April 2017, certain Company representatives explicitly told Plaintiffs that Kline would be opening a John Hancock 401(k) account for them, which would be funded through their weekly payroll deductions.

73.     Although Defendants did in fact make wage deductions from Plaintiffs weekly paychecks, the money was never remitted to their 401(k) accounts as such account did not exist. In order for Defendants to accomplish this blatant theft of employee wages, they engaged in a series of threats, misrepresentations and diversion tactics to convince Plaintiffs' that they were contributing to these phantom accounts.

74.     When Plaintiff Mitchell was hired in September 2016, his supervisor at Kline, Tommy Hollinsworth ("Hollinsworth"), told Mitchell that the Company would be opening a John Hancock 401(k) account on Mitchell's behalf that would be funded through weekly deductions of Mitchell's paycheck. Hollinsworth further advised Mitchell that if he ever attempted to withdraw funds from his John Hancock account, he would never work for the Company again.

75.     Thereafter, the Company withheld a portion of Mitchell's weekly wages, which

Mitchell believed were being remitted to his retirement fund.

76.   In October 2018, Plaintiff Mitchell received a letter from Kline advising him that the wages the Company was previously withholding for his 401(k) account would no longer be deducted from Mitchell's weekly paycheck, but instead paid to Mitchell directly.

77.   When Mitchell approached Kline HR representative Ron regarding the status of his John Hancock account, Ron advised Mitchell that the Company never opened an account for Mitchell, although the company had consistently been deducting 401(k)-designated funds from Mitchell's weekly wages. After Ron admitted that Defendants had lied to Mitchell about his retirement account, Ron advised Plaintiff that Kline would be "opening a John Hancock account for Mitchell, which would be funded next month."

78.   Defendants' deception of Plaintiffs is further demonstrated in a series of discussions between Plaintiff Newnam and HR representative Ron in 2018. After Newnam was laid off from Kline in April 2018, he contacted Ron in order to obtain information for his 401(k) account. Ron then provided Newman with a purported account number and ID number for Newnam's John Hancock account, however, when Newnam contacted John Hancock, they advised him that could not locate any accounts registered to Newnam or the credentials provided by Ron.

79.   They false account information provided by Ron was clearly another tactic by Defendants to hide their ongoing misappropriation of Newnam's retirement funds. During their second discussion, Ron, now openly admitting that the Company owned Newman money, advised Newnam that his money would be paid back, in full, by the end of October 2018.

80.   When Kline failed to pay Newman his wages by October 31, 2018, Ron advised Plaintiff that Kline was filing an extension on its taxes and that Newnam would receive his money by December 31, 2018. After Kline failed to pay again, Ron provided Newnam with a third

payment date of March 31, 2019, also advising that Newman would be receiving a John Hancock account Statement confirming that (i) the Company had actually opened a 401(k) account for Newnam; and (ii) all of Newnam's money had been remitted to his newly-established account.

81.     To date, Defendants have failed to pay Newnam, or any of the other Plaintiffs, the wages owed to them.

### D.  Defendants' ERISA Violations

82.     Regardless of whether or not the Defendants actually established a 401(k) account for a particular Plaintiff, it is undisputed that the wages that Kline deducted, and illegally retained, from Plaintiffs' paychecks were designated as 401(k) Plan contributions.  As such, unremitted employee contributions are assets of the 401(k) Plan within the meaning of ERISA. Defendants failed to segregate the unremitted Plaintiff contributions from the general assets of the Company and failed to hold them in trust as 401(k) Plan assets.

83.     Kline and the Individual Defendants failed to assure that the 401(k) Plan assets were collected by the plan.

84.     Kline and the Individual Defendants knowingly participated in acts or omissions be each other that they knew to be a breach of fiduciary duty.

85.     Kline and the Individual Defendants failed to comply with Section 404(a)(1) of ERISA in the administration of their specific fiduciary responsibilities and each enabled the other to commit breaches of ERISA.

86.     Kline and the Individual Defendants each knew that the other had breached their fiduciary duties, but did not make reasonable efforts under the circumstances to remedy the breaches.

87.     The Defendants' ERISA violations occurred in, but were not limited to, the

following 401 (k) Plan transactions:

    a.    failing to remit employee contributions and loan repayment amounts withheld from employees' wages and thus 401(k) Plan assets to the 401(k) Plan timely or at all;

    b.    permitting the Defendants to use 401(k) Plan assets for their own benefit and other non-Plan purposes; and

    c.    failing to properly administer the 401(k) Plan for the exclusive purpose of providing benefits to participants and beneficiaries and defraying reasonable expense of administering the 401(k) Plan.

88.    An updated accounting will be necessary to determine the extent of the 401(k) Plan losses suffered by each Plaintiff.

### E. Defendants' NJWPL Violations

89.    As employees, Kline and the Individual Defendants were required to pay Plaintiffs all wages due to them at least twice per month during each calendar month.

90.    As Plaintiffs' employer, Kline and the Individual Defendants were prohibited from withholding, diverting, or otherwise retaining Plaintiffs' wages for the benefit of Defendants – whether it be to cover personal expenses, business purposes, or pay other employees.

91.    The Defendants' NJWPL violations included the failure to pay Plaintiffs' the money deducted from their weekly paychecks that was designated for their 401(k) retirement accounts, as well as their continued failure to restore to Plaintiffs and/or the 401(k) Plan the full amount of illegally retained wages, including interest and lost opportunity costs for Plaintiffs' contributions that were untimely remitted or that have not been remitted at all.

### F. Plaintiffs' Ongoing and Continuing Damages

92.    Upon information and belief based on the information known by Plaintiffs to date,

Defendants' violations resulted in significant losses to the Plaintiffs and their 401(k) Plan accounts. During the period of January 2016 through March 2019, Defendants, as fiduciaries, failed to timely remit hundreds of thousands of dollars in employee contributions withheld from Plaintiffs' wages to the 401(k) Plan.

93.     Additionally, the Defendants retention of Plaintiffs' wages has prevented Plaintiffs' from earning interest on their retirement funds, as well as resulted lost opportunity costs, which cannot be calculated until the full amount of 401(k) Plan assets are restored, including lost opportunity costs for employee contributions that were unremitted and/or untimely remitted.

94.     Again, a full accounting of Defendants' records is required in order to determine the extent of the 401(k) Plan losses suffered by each Plaintiff.

**G.   Direct Liability**

95.     As a result of engaging in breaches of their fiduciary responsibilities, obligations, or duties and by engaging in transactions prohibited by ERISA, as described above, Defendants caused the 401(k) Plan to suffer financial losses for which Defendants Kline, Kline-Penate, Ed Kline and Miller are liable pursuant to ERISA Section 409(a), 29 U.S.C. § 1109(a).

**H.   Co-Fiduciary Liability**

96.     Pursuant to the provisions of ERISA Section 405, 29 U.S.C. § 1105, Defendants Kline, Kline-Penate, Ed Kline and Miller are fiduciaries with respect to the 401(k) Plan, and are personally liable for the breaches of fiduciary responsibility set forth above committed by their co-fiduciaries with respect to the 401(k) Plan.  Defendant Kline-Penate, as 401(k) Plan Administrator, and Defendants Kline-Penate, Ed Kline and Miller, as fiduciaries acting on Kline's behalf for the 401(k) Plan, were each aware of the actions of their co-fiduciaries and able to take action to remedy the violations set forth above, but failed to do so.

## CLAIMS FOR RELIEF

## COUNT I

**Violations of ERISA**
**Missing Employee Contributions**
(*Against All Defendants*)

97.     Plaintiffs hereby incorporate each preceding and succeeding paragraph as though fully set forth herein.

98.     By the actions and conduct described herein, Defendants Kline, Kline-Penate, Ed Kline and Miller, as fiduciaries of the 401(k) Plan:

a.   failed to ensure that all assets of the 401(k) Plan were held in trust by one or more trustees, in violation of Section 403(a) of ERISA, 29 U.S.C. § 1103(a);

b.   failed to ensure that the assets of the 401(k) Plan did not inure to the benefit of the Company in violation of Section 403(c)(1) of ERISA, 29 U.S.C. § 1103(c) (1);

c.   failed to discharge their duties with respect to the 401(k) Plan solely in the interest of the participants and beneficiaries (*i.e.* Plaintiffs) and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of administering the 401(k) Plan, in violation of Section 404(a)(1)(A) of ERISA, 29 U.S.C. § 1104(a)(1)(A);

d.   failed to discharge their duties with respect to the 401(k) Plan solely in the interest of the participants and beneficiaries and with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, in violation of Section 404(a)(1)(B) of ERISA, 29 U.S.C. § 1104(a)(1)(B);

e.   failed to discharge their duties in accordance with the documents and instruments governing the 401(k) Plan insofar as such documents and instruments are consistent with the provisions of Title I and IV of ERISA, in violation of Section 404(a)(1)(D) of ERISA, 29 U.S.C. § 1104(a)(1)(D);

f.   caused the 401(k) Plan to engage in transactions which they knew or should have known constituted the direct or indirect transfer of 401(k) Plan assets to, or use of 401(k) Plan assets by or for the benefit of a party-in-interest, in violation of Section 406(a)(1)(D) of ERISA, 29 U.S.C. § 1106(a)(1)(D);

g.   dealt with assets of the 401(k) Plan in their own interest or for their own account, in violation of Section 406(b)(1) of ERISA, 29 U.S.C. § 1106(b) (1);

h.   acted in their individual or in any other capacity in a transaction involving the 401(k) Plan on behalf of a party whose interests are adverse to the interests of the 401(k) Plan, or the interests of its participants or beneficiaries, in violation of ERISA Section 406(b)(2), 29 U.S.C. § 1106(b)(2).

99.   As a direct and proximate result of these breaches of fiduciary duty, the 401(k) Plan and its Plaintiff participants suffered hundreds of thousands of dollars of losses.

## COUNT II

**Violations of ERISA**
**Engaging in Self-Interested Prohibited Transactions with Plan Assets**
(*Against All Defendants*)

100.   Plaintiffs hereby incorporate each preceding and succeeding paragraph as though fully set forth herein.

101.   ERISA prohibits fiduciaries from engaging in certain transactions and imposes strict liability for any losses that result. Specifically, "a fiduciary with respect to a plan shall not…

deal with the assets of the plan in his own interest or for his own account. . . ." 29 U.S.C. §1106(b).

102.    The Defendants, as sponsor, administrator and fiduciaries of the 401(k) Plan, committed prohibited transactions when they dealt with the 401(k) Plan's assets in their own interest and for their own accounts.

103.    As a direct and proximate result of these prohibited transactions, the Defendants, directly or indirectly, withheld and retained hundreds of thousands of dollars in employee contributions that they were required to be remit to Plaintiffs' 401(k) Plan accounts.

104.    As a direct and proximate result of these prohibited transactions, the 401(k) Plan and its participants and beneficiaries suffered hundreds of thousands of dollars in losses.

105.    As a direct and proximate result of these prohibited transactions, Defendants caused an immediate loss to the Plaintiff participants' individual 401(k) Plan accounts.

106.    Pursuant to ERISA, Defendants must disgorge all amounts illegally withheld and retained from Plaintiffs' wages that were designated as 401(k) Plan contributions and restore all losses suffered by the 401(k) Plan, including interest, to Plaintiffs.

## COUNT III

### Violations of ERISA
### Co-fiduciary Liability
### (*Against All Defendants*)

107.    Plaintiffs hereby incorporate each preceding and succeeding paragraph as though fully set forth herein.

108.    As a direct and proximate result of the breaches of fiduciary duties committed by the Individual Defendants and the Company, the 401(k) Plan has suffered losses for which Individual Defendants and the Company are jointly and severally liable, pursuant to Section 409 of ERISA, 29 U.S.C. § 1109.

109.    By participating knowingly in the fiduciary breaches of one another, knowing such acts or omissions to be breaches of fiduciary duty, the Company and Individual Defendants are each liable for the other's breaches of fiduciary responsibility, pursuant to Section 405(a)(1) of ERISA, 29 U.S.C. § 1105(a)(1).

110.    Individual Defendants and the Company failed to comply with Section 404(a)(1) of ERISA in the administration of their specific fiduciary responsibilities and enabled the other to commit breaches of ERISA. By failing to comply with Section 404(a)(1) of ERISA in the administration of their specific fiduciary responsibilities and thereby enabling the other to commit breaches of ERISA, Individual Defendants and the Company are each liable for the other's breaches of fiduciary responsibility, pursuant to Section 405(a)(2) of ERISA, 29 U.S.C. § 1105(a)(2). 28. The Company and Individual Defendants, as fiduciaries of the 401(k) Plan by failing to make reasonable efforts under the circumstances to remedy the breaches of which they had knowledge, are each liable for the other's fiduciary breaches, pursuant to Section 405(a)(3) of ERISA, 29 U.S.C. § 1105(a)(3).

## COUNT IV

**Violations of ERISA, 29 U.S.C. § 1132(c)(1)(B)**
**Civil Penalties for Defendants' Failure to Furnish 401(k) Plan Documents to Plaintiffs**
(*Against All Defendants*)

111.    Plaintiffs hereby incorporate each preceding and succeeding paragraph as though fully set forth herein.

112.    Under ERISA, 29 U.S.C. § 1132(c)(1)(B), a plan administrator faces personal liability to a plan participant for civil penalties in the amount of up to $ 100.00 per day for failure to provide information requested by the participant that ERISA regulations require the administrator to furnish.

113.    ERISA, 29 U.S.C. § 1024(b)(1) requires a 401(k) plan administrator to automatically furnish to each 401(k) Plan participant a copy of the summary plan description within 90 days after he becomes a participant.

114.    ERISA required Defendants, as the Plan Administrator, to automatically provide Plaintiffs with a summary plan description, as well as a description of any Plan modifications, including termination. Plaintiffs need not have made any requests for such information.

115.    Defendants, as the Administrator of the 401(k) Plan, failed to provide Plaintiffs with a summary plan description within 90 days of Plaintiffs becoming participants in the plan.

116.    Defendants, as the Administrator of the 401(k) Plan, failed to provide Plaintiffs with the pertinent Plan-related information, despite Plaintiffs requests for plan documents.

117.    Even without any requests by Plaintiffs, Defendants, as the Administrator of the 401(k) Plan, were required to provide a summary plan description to Plaintiffs.

118.    Defendants, as the administrator of the 401(k) Plan, failed to provide a summary plan description to the plaintiffs-participants pursuant to 29 U.S.C. § 1024(b)(1) within 90 days of the date upon which the Plaintiffs became participants and, therefore, accordingly are liable for civil penalties under 29 U.S.C. § 1132(c)(1)(B).

119.    To the extent that Defendants, as Administrator of the 401(k) Plan, failed to provide a Plaintiffs with information ERISA requires the administrator to automatically furnish and there are no specific penalty provisions for such failure, pursuant to 29 U.S.C. § 1132(a)(3), this Court may impose any appropriate equitable relief, including penalties under 29 U.S.C. § 1132(c)(1)(B).

120.    In deciding whether to assess a penalty under 29 U.S.C. § 1132(c)(1)(B), Plaintiffs respectfully request that this Court consider, as alleged herein, such factors as bad faith or intentional conduct on the part of the Defendants, the length of the delays in providing information

to Plaintiffs, the number of requests made by Plaintiffs, the documents withheld, and the existence

of any prejudice Plaintiffs in not being provided 401(k) Plan documents for several years.

## COUNT V

**Violations of NJWPL, N.J.S.A. § 34:11-4.2**
**Unpaid Wages**
(*Against Defendant Kline and the Individual Defendants*)

121.    Plaintiffs hereby incorporate each preceding and succeeding paragraph as though

fully set forth herein.

122.    At all times relevant, Plaintiffs were employees of Defendants, and Defendants

have been employers of Plaintiffs as defined by the NJWPL and its supporting regulations.

123.    Defendants were required to pay Plaintiffs all wages due to them at least twice per

month during each calendar month as required by N.J.S.A. § 34:11-4.2.

124.    Defendants failed to pay Plaintiffs the wages they were due under the NJWPL.

125.    Defendants were prohibited from withholding or diverting the wages of Plaintiffs

for personal and/or business expenditures as required by N.J.S.A § 34:11-4.4.

126.    Due to Defendants' violations of the NJWPL, Plaintiffs are entitled to recover

unpaid wages, liquidated damages, reasonable attorney's fees, costs, and prejudgment and post-

judgment interest for the subject time periods when Defendants' engaged in the misconduct as

alleged in this Complaint.

## COUNT VI

**Unjust Enrichment**
(*Against Defendant Kline and the Individual Defendants*)

127.    Plaintiffs hereby incorporate each preceding and succeeding paragraph as though

fully set forth herein.

128.    Defendant Kline and the Individual Defendants have benefited from the money

retained through the failure to remit Plaintiffs' wage deductions to their designated 401(k) retirement accounts as alleged in this Complaint.

129.    Defendants' financial benefit resulting from its unlawful and inequitable acts is traceable to their failure to remit Plaintiffs' wage deductions to their designated 401(k) retirement accounts as alleged in this Complaint.

130.    Plaintiffs have conferred upon Defendants an economic benefit, in the nature of unremitted 401(k) contributions, to the economic detriment of Plaintiffs.

131.    The economic benefit of improperly retained payroll deductions derived by Defendants is a direct and proximate result of Defendants' unlawful practices.

132.    The financial benefits derived by Defendants rightfully belong to Plaintiffs, as Plaintiffs and/or the Plaintiffs' individual 401(k) retirement accounts did not receive the benefit of the wages that were deducted from their weekly paychecks, inuring to the benefit of Defendants.

133.    It would be inequitable under unjust enrichment principles under the laws of New Jersey for Defendants to be permitted to retain any of the unremitted 401(k) contributions retained and/or derived from Defendants' unfair and unconscionable methods, acts, and compensation practices alleged in this Complaint.

134.    Defendants are aware of and appreciate the benefits bestowed upon them by Plaintiffs.

135.    Defendants should be compelled to disgorge in a common fund for the benefit of Plaintiffs all unlawful or inequitable proceeds it received and/or retained.

136.    A constructive trust should be imposed upon all unlawful or inequitable sums received and/or retained by Defendants traceable to Plaintiffs.

137.    Plaintiffs have no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that this Court issue an order:

A.   Requiring Individual Defendants and the Company, jointly and severally, to restore to the 401(k) Plan all losses, including interest or lost opportunity cost and the cost of an independent fiduciary, which were caused by their fiduciary breaches;

B.   Requiring Individual Defendants and the Company to disgorge to the 401(k) Plan any and all unjust enrichment they have received as a result of their fiduciary breaches;

C.   Requiring the 401(k) Plan to set off any individual account balance of Individual Defendants against the amount of losses, including interest or lost opportunity cost, and the cost of an independent fiduciary resulting from their fiduciary breaches, as authorized by 29 U.S.C. § 1056(d)(4), and reallocating the account balance to the non-breaching participants, if the losses are not otherwise restored to the Plan by Individual Defendants and the Company;

D.   Removing Individual Defendants and the Company as fiduciaries of the 401(k) Plan and of any other employee benefit plan for which they act as fiduciaries;

E.   Permanently enjoining Defendants from acting directly or indirectly, in any fiduciary capacity, with respect to any employee benefit plan subject to ERISA;

F.   Permanently enjoining Individual Defendants and the Company from exercising any custody, control, or decision making authority with respect to the assets of any employee benefit plan covered by ERISA;

G.   Appointing an independent fiduciary with plenary authority and control with respect to the management and administration of the 401(k) Plan, including the authority to marshal assets on behalf of the 401(k) Plan, to pursue claims on behalf of the 401(k) Plan, and to

take all appropriate actions for the administration, termination, and distribution of the 401(k) Plan, with all costs to be borne by Individual Defendants and the Company;

H.  Ordering Individual Defendants and the Company, their agents, employees, service providers, banks, accountants, and attorneys to provide the Plaintiffs and the independent fiduciary with all of the books, documents, and records relating to the finances and administration of the 401(k) Plan, and to make an accounting to the Plaintiffs and the independent fiduciary of all contributions to the 401(k) Plan and all transfers, payments, or expenses incurred or paid in connection with the 401(k) Plan;

I.  Barring Defendants from engaging in any future violations of ERISA;

J.  Award Plaintiffs their attorneys' fees and costs pursuant to ERISA, 29 U.S.C. §1132(g) and/or the Common Fund doctrine; and

K.  Award such other and further relief as the Court deems equitable and just.

## JURY DEMAND

Pursuant to F.R.C.P. 38(b), Plaintiffs hereby demand a trial by jury on all of the triable issues stated herein.

Dated: June 26, 2019

Respectfully submitted,

**HACH ROSE SCHIRRIPA & CHEVERIE LLP**

By:     */s/ Frank Schirripa*
        Frank R. Schirripa
        John A. Blyth
        112 Madison Avenue, 10th Floor
        New York, New York 10016
        Telephone: (212) 213-8311
        Facsimile: (212) 779-0028

Anthony Scordo, III
Joseph D. Lento
**OPTIMUM LAW GROUP, P.C.**
3000 Atrium Way - Suite # 200
Mt. Laurel, NJ 08054
856-652-2000 - Office
856-375-1010 - Fax

*Counsel for Plaintiffs*